UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| VENIDA WHITTAKER ) | |
| ) | |
| V. ) | NO. 2:07-CV-177 |
| ) | |
| DORIS WHITTAKER and RICHARD ) | |
| EDWARD WHITTAKER ESTATE ) | |

**MEMORANDUM AND ORDER**

Each party to this suit has filed a motion for summary judgment. Summary judgment is proper only if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). The party opposing a motion for summary judgment must be indulged with all possible favorable inferences from the facts. *Plott v. GM Motors Corp.*, 71 F.3d 1190 (6th Cir. 1995).

Although there are a few facts in this case that are disputed, those facts are not material to the disposition of the pending motions.

This is a suit on a $485,000.00 demand note executed on June 24, 2002, by Richard Whittaker and his wife, Doris, payable to Richard's parents, Earl and Venida Whittaker. For the sake of clarity, the parties hereafter will be identified only by their first names.

In 1981, Earl and Venida transferred to their son, Richard, a tract of land in Rowan County, Kentucky, upon which was situated a building used originally as a tobacco warehouse. Ultimately, Richard operated a furniture store in the building.

In approximately 1992, Richard commenced living with Doris.

In January 1993, Richard conveyed to his parents, Earl and Venida, a life estate in the property. At all relevant times, Richard and Doris were residents of Kentucky, and Earl and Venida resided in Tennessee.

In December 1995, Richard married Doris. Although Doris had no interest in the real property, she assisted Richard in operating the furniture store business.

Notwithstanding that Richard and Doris used the property for their business, they paid no rent to the life tenants, Earl and Venida, for that use. Also, a company had leased a portion of the property for erection of a billboard sign, and Richard and Doris retained all rent from that lease with the acquiescence of Earl and Venida.

In 2000, the property was damaged by a flood. Richard and Doris obtained a loan from the Small Business Administration ("SBA") in the amount of $84,200.00 to repair that flood damage, and a mortgage was executed by the owner of the fee title, Richard, and the two life tenants, Earl and Venida, to secure repayment of that SBA loan. Doris also executed that mortgage, notwithstanding that her only interest in the property was whatever interest Kentucky law granted her by virtue of being the wife of the fee owner. The parties did not explicitly advise the court regarding the subsequent history of this loan. It is assumed that it was absorbed into the 2002 SBA loan, discussed in the succeeding paragraphs.

In 2001, the building and its contents were damaged by an even more devastating flood, prompting Richard and Doris to again contact the SBA regarding a second loan on the property. On May 13, 2002, Richard and Doris executed a promissory note to the SBA in

2

Case 2:07-cv-00177   Document 74   Filed 05/12/09   Page 2 of 6   PageID #: 799

the amount of $292,500.00. The SBA subsequently advised Richard and Doris that it would disburse no more than $10,000.00 of the loan proceeds unless Earl and Venida executed a guaranty. On June 3, 2002, Earl and Venida both signed a mortgage on the property with respect to their life estates, as well as an "Unconditional Limited Guarantee" in favor of SBA for the $292,500.00 note. That guarantee recited that the liability of Earl and Venida was limited to the amount the SBA might obtain from the pledged collateral, i.e., the warehouse property. Thus, in practical effect, the guarantee did not extend Earl and Venida's potential liability to the SBA beyond the loss of their life estates in the event of a default by Richard and Doris.

Earl and Venida signed the guarantee on June 3, 2002, and it and the mortgage were received by the SBA on June 10, 2002.[1]

On June 24, 2002, Earl and Venida traveled from their home in Tennessee to the home of Richard and Doris in Kentucky. Earl and Venida demanded that they be given a lien on all property owned by Richard and Doris in light of the obligations they undertook to SBA on behalf of Richard and Doris in connection with the $292,500.00 loan. After Doris refused to give Earl and Venida a lien on her home, Earl and Venida left to return to Tennessee. However, before they left Kentucky, Richard contacted them by telephone, asking them to remain in Kentucky. Richard later called Doris, instructing her to meet him and his parents at the office of a Kentucky attorney. At the lawyer's office, Richard and Doris executed the

---

[1] The mortgage was recorded in the Rowan County Clerk's Office on June 7, 2002. *See*, Doc. 62-1.

3

$485,000.00 note, which reads as follows:

> For value received, we **RICHARD E. WHITTAKER and DORIS WHITTAKER** (the "maker"), husband and wife, to the order of **EARL E. WHITTAKER and VENIDA J. WHITTAKER**, husband and wife (the "holder"), at 259 Lakeridge Drive, Jonesborough, TN 37659, the principal sum and amount of **FOUR HUNDRED EIGHTY-FIVE THOUSAND DOLLARS ($485,000.00)**, together with interest at the rate of _____ Per cent (___%) per annum, being due and payable on demand of the holder.

Additionally, Richard and Doris executed a mortgage on the Rowan County, Kentucky real estate, as well as a deed of trust on realty in Johnson City, Tennessee, owned by Richard and Doris.

At the time the $485,000.00 note was executed, nothing of value passed from Earl and Venida to Richard and Doris.

On June 26, 2002, the SBA issued a check in the amount of $103,400.00 to Richard and Doris. Later, other checks in varying amounts were issued by the SBA to Richard and Doris.

In July 2004, Earl died. Shortly thereafter, Venida executed a release of the deed of trust on the Tennessee property so that it could be sold by Richard and Doris.

On February 10, 2005, Richard and Doris divorced. With respect to the Rowan County, Kentucky warehouse property, the divorce agreement stated that "[t]he husband shall receive the Whittaker's Warehouse and the debt of approximately $285,000.00." The agreement also stated that "[t]he parties are splitting the value of the inventory of the furniture business which is valued at $20,000.00."

4

Richard died in May 2006.

In December 2006, the Rowan County, Kentucky property was purchased by Wal-Mart for $950,000.00. The May 2002 promissory note executed by Richard and Doris to the SBA was paid from the proceeds of the sale, thereby ending any potential liability by Venida (or Earl, had he been alive) on the unlimited conditional guarantee. Venida was paid $252,356.56 for her life estate in the property.

On August 1, 2007, Venida filed this suit on the $485,00.00 note against Doris and the estate of Richard.

The first issue which this court must decide is whose substantive law to apply, Kentucky's or Tennessee's. "In deciding what substantive law applies, [the court] must first look to the forum state's choice of law statute." *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989). Since this court sits in Tennessee, it is Tennessee's rules regarding choice of law to which this court must look. The note was executed in Kentucky and by Kentucky residents. However, the note specifically provided that it was to be paid to the order of the obligees "at 259 Lakeridge Drive, Jonesborough, Tennessee." Under Tennessee law, the place of payment determines the law to be applied regarding a promissory note. *Edgington v. Edgington*, 162 S.W.2d 1082, 1085-86 (Tenn. 1942). Therefore, since payment was to be in Tennessee, under Tennessee's choice of law rule, Tennessee law applies.[2]

At first blush, this case seems relatively simple and straight forward, since there is but

---

[2]As a practical matter, the relatively minor differences in Kentucky law would not affect the outcome of this case.

a single dispositive issue: was the $485,000.00 note supported by an adequate consideration? But the longer that question is pondered, the more complicated the case is perceived to be. Lacking any direct evidence, at least as far as the record so far reveals, the case must be decided on the basis of inferences that may be reasonably drawn from the available facts. As matters now stand, there are contrary inferences which can reasonably be drawn from the facts, thus precluding the granting of summary judgment to any party. Accordingly, all motions for summary judgment - Docs. 56, 59, and 61 - are **DENIED**.

    SO ORDERED:

                                                  s/ Dennis H. Inman
                                          United States Magistrate Judge